United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TOTTEN, JOSE MORENO, in their capacities as Trustees of the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>        Plaintiffs,<br>  vs.<br><br>REMEDIATION CONSTRUCTORS, INC., a California corporation, doing business as REMCON, INC.,<br><br>        Defendant.<br>_____/ | No. C 04-4327 PJH  (MEJ)<br><br>REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

## I.  INTRODUCTION

Before the Court is plaintiffs Larry Totten, et al.'s, ("Plaintiffs") Motion for Default Judgment, filed on February 26, 2005.  After careful consideration of Plaintiffs' papers, relevant statutory and case law authority, and good cause appearing, the Court hereby RECOMMENDS that the District Court GRANT in part and DENY in part Plaintiffs' Motion for Default Judgment against defendant Remediation Constructors, Inc., ("Defendant") for the reasons listed below.

## II.  BACKGROUND

**A.**     **Factual Background**

The Court incorporates the factual background of this case as set forth in Plaintiffs' moving papers. Plaintiffs are trustees of the Trust Funds named in the caption.  Each of the Trust Funds is an  employee

benefit plan subject to and pursuant to Section 302 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 186), and a multi-employer employee benefit plan within the meaning of Sections 3, 4, and 502 of Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1002, 1003, 1132). Each of the Trust Funds is represented by the Northern California District Council of Laborers of the Laborers' International Union of North America ("Laborers Union"). The Laborers Union and the Association of General Contractors entered into a Master Agreement ("Agreement"), which binds signatories to the terms of the Agreement. At all relevant times, Defendant was a member of the Associated General Contractors and by virtue of such membership, was subject to all the terms and conditions of the Agreement. Defendant has been an "employer" within the meaning of Section 3 (5) and Section 515 of ERISA (29 U.S.C. § 1002(5), 1145) and an "employer . . . affecting commerce" within the meaning of Section 301 of LMRA (29 U.S.C. § 185). Plaintiffs maintain that Defendant is a California corporation.

Pursuant to the terms of the Agreement, Defendant promised to contribute and pay Plaintiffs for each hour worked by any of its employees covered by the Agreement. Plaintiffs rely on Defendant's self-reporting and conduct audits to ensure employer compliance with the contribution requirements. According to Plaintiffs' records, Defendant failed, neglected, or refused to make timely benefit contributions for the period of May 2003 through July 2003. Plaintiffs also believe that additional contributions may be due and owing, but cannot confirm until Defendant submits to an audit.

Plaintiffs seek default judgment in their favor against Defendant for an Order: (1) granting Plaintiffs $22,639.43 in unpaid fringe benefits and liquidated damages for the period of May 2003 through July 2003, (2) directing Defendant to submit to an audit of their books and records, (3) directing Defendant to pay contributions found due and owing as a result of said audits, (4) granting Plaintiffs $4,010 in reasonable attorneys' fees and court costs, and (5) for this Court to retain jurisdiction.

**B.   Procedural Background**

On October 13, 2004, Plaintiffs filed a Complaint for Audit, Injunction, Breach of Contract and Damages.

On November 27, 2004, Plaintiffs duly served Defendant with the Complaint.

On December 17, 2004, Defendant failed to meet the deadline to answer the Complaint.

2

1  On January 13, 2005, Plaintiffs filed a Motion for Entry of Default and on January 24, 2005, the
2  Clerk of the Court entered default against Defendant.
3  On February 10, 2005, Plaintiffs filed the declarations of Concepcion E. Lozano-Batista and Ryan
4  Messano in support of their Motion for Default Judgment.
5  On February 17, 2005, the Honorable Phyllis J. Hamilton referred this matter to Magistrate Judge
6  Maria-Elena James for a report and recommendation on Plaintiffs' Motion for Default Judgment.
7  The Court conducted a hearing on Plaintiffs' motion on April 14, 2005.

### III. DISCUSSION

**A.  Personal and Subject Matter Jurisdiction**

When considering a motion for default judgment, the Court must first determine whether it has both subject matter and personal jurisdiction. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

Here, Defendant is a California corporation and the Court can therefore exercise personal jurisdiction over Defendant. Also, the Court has subject matter jurisdiction because Plaintiffs' claim involves a violation of ERISA. 29 U.S.C. § 1001 (e)(1) & (2) (" . . . the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary [or] fiduciary . . . . ").

**B.  Legal Standard**

Federal Rule of Civil Procedure 55 (b)(2) empowers a district court to enter default judgment against a defendant who has failed to appear in a case. Fed.R.Civ.P. 55 (b)(2). The district courts have discretion in determining whether to grant or deny a motion for default judgment. DirecTV, Inc. v. Hendrix, 2005 WL 757562 (N.D. Cal. 2005) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) ("the district court decision whether to enter a default judgment is a discretionary one)). Upon an entry of default, the factual allegations of the plaintiff will be taken as true. Kingvision Pay-Per-View, Ltd. v. Rivers, 2000 WL 356378, *1 (N.D. Cal 2000). Factors normally considered by the courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the

3

merits of plaintiff's substantive claims, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**C.     Legal Analysis**

The Court considers six factors in determining whether to grant default judgment.  Id. at 1471-72.  First, the Court examines the possibility of prejudice to Plaintiffs if default judgment is not granted.  Here, pursuant to the relevant terms and conditions of the Agreement, Defendant is bound to pay Plaintiffs the employee benefit contributions agreed upon.  Plaintiffs are therefore entitled to the unpaid contributions from May 3002 through June 2003.  The terms also state that Defendant would submit to an audit when requested by the Plaintiffs.  Without an audit, Plaintiffs cannot fulfill their fiduciary duty to ensure that Defendant has made proper payments and that benefits are extended at the appropriate level to all participants.

The terms further state that Defendant is responsible for paying reasonable expenses that incurred due to delinquent contributions.   Here, the attorneys' fees and court costs accrued due to Defendant's failure to pay contributions and to submit to an audit.  Therefore, if default judgment is not granted, Plaintiffs will suffer prejudice because they may never collect the unpaid contributions or be able to fulfill their fiduciary duty to their participants.  Further, Plaintiffs should not be responsible for the attorneys' fees and court costs which have resulted from pursuing this litigation.

Second, the Court must examine the merits of Plaintiffs' substantive claim.  If there is no merit to the claim, it is an abuse of discretion to grant default judgment.  Aldabe, 616 F.2d at 1089   (" . . . given lack of merit in substantive claims, there was no abuse of discretion in declining to enter default judgment in favor of plaintiff.").  Here, the Court finds that Plaintiffs have set forth meritorious claims.  The claim for unpaid fringe benefits and liquidated damages is based on both the terms of the Agreement and the payroll records from May 2003 to July 2003. Plaintiffs also contend that additional amounts may be due and owing, but that an audit is necessary to confirm the exact amount.  Based on the terms of the Agreement, Defendant is required to allow an auditor to review relevant records regarding the enforcement of the collective

4

bargaining agreement.  The claim for attorneys' fees and costs is also based on the terms of the Agreement, to which Defendant is bound.  Further, Defendant is obliged to submit records, to remit contributions, and to pay reasonable attorneys' fees and costs pursuant to ERISA.  29 U.S.C. § 1132 (a)(3), (q)(2).

With regard to Plaintiffs' remaining claim that Defendant remits any and all contributions found owing as a result of the audit, the Court finds that this claim should not be granted at this time.  If it is determined, as a result of the audit, that Plaintiffs are entitled to further payments, Plaintiffs should file a subsequent request regarding this amount.  The Court should retain jurisdiction over further proceedings.

Third, the Court looks at the sum of money at stake in the action.  This factor is meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake.  See Sony Corp. v. Elm State Electronics, Inc., 800 F.2d 317, 320 (2nd Cir. 1986) ("court could have considered whether the entry of default would lead to a harsh result or to the entry of a large money judgment.").  The Eitel court relied in part on the fact that plaintiff was seeking "almost $3 million in damages" in holding that the district court did not abuse its discretion in denying a default judgment.  See Eitel, 782 F.2d at 1472.  Here, the Court finds that the amount Plaintiffs are seeking is reasonable since the amount prayed for in the complaint is supported by documentation.  Further, the amount requested by Plaintiffs affects many employees.  Thus, the Court finds that it would not be an abuse of the Court's discretion to award the requested amount of $26,649.43 and this factor does not mitigate against the entry of a default judgment.

The fourth factor the Court must consider is the possibility of a dispute concerning material facts.  Here, Ryan Messano, a collection analyst for Plaintiffs, provides a declaration in support of Plaintiffs' Motion for Default Judgment.  In his declaration, Mr. Messano attests, under penalty of perjury, that he is responsible for the collection of fringe benefit contributions owed, including the amount based upon an audit.  Mr. Messano states that Plaintiffs maintain an account for Defendant and that the records show that Defendant failed to remit contributions for the period of May 2003 through July 2003.  Mr. Messano further states that Plaintiffs demanded unpaid contributions, but Defendant failed to remit any payments.

In addition, Concepcion E. Lozano-Batista also provides a declaration in support of Plaintiffs' Motion for Default Judgment.  In her declaration, Ms. Lozano-Batista states, under penalty of perjury, that

5

she is an attorney for the law firm representing Plaintiffs in this matter. Ms. Lozano-Batista states that the total amount of attorneys' fees billed is $2,707.50 and the unbilled work is estimated at $1,012.50. Ms. Lozano-Batista also states that the total amount of court costs incurred to date is $290.00. Further, the Court notes that even though Defendant was served in this action, it failed to respond to any allegations found in the Complaint. Defendant also failed to file any opposition to Plaintiffs' Motion for Default Judgment, or appear at the scheduled hearing regarding the motion. Accordingly, the Court finds that Defendant has shown no dispute concerning material facts.

Fifth, the Court examines whether the default was due to excusable neglect. Specifically, it must be determined whether Defendant had cause for neglecting to file a timely answer to the Complaint. In Eitel, the court determined that defendant's failure to file a timely answer was due to excusable neglect because he thought the case had settled before his answer was due. Id. Here, Defendant not only failed to file a timely answer to the Complaint, but has not responded to any summons or made any appearances in this matter. Therefore, since the Court has no information regarding Defendant's status, the Court cannot determine that the default was due to excusable neglect.

Finally, the Court must consider the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Generally, default judgment is disfavored as cases should be decided upon the merits whenever reasonably possible. Eitel, 782 F.2d at 1472 (citing Pena v. Seguros, 770 F.2d 811, 814 (9th Cir. 1985)). Here, the Court is not able to decide this case upon the merits because Defendant has not participated in any of the necessary proceedings. Therefore, despite the policy consideration to resolve cases on their merits, Plaintiffs are entitled to relief. Accordingly, the Court hereby RECOMMENDS that the District Court grant in part and deny in part, Plaintiffs' Motion for Default Judgment.

## IV. CONCLUSION

Based on the foregoing factors, Federal Rule of Civil Procedure 55(b)(2), and case law authority, the Court hereby RECOMMENDS that the District Court grant in part and deny in part Plaintiffs' Motion for Default Judgment. Accordingly, the Court finds that Plaintiffs' are entitled to the following:

1) Damages in the amount of $22,639.43 in unpaid fringe benefits and liquidated damages,

2) Damages in the amount of $4,010 in reasonable attorneys' fees, and Plaintiffs' costs of suit,

3) An order directing Defendant to submit to an audit of their books and records, and

4) An order for this Court to maintain jurisdiction.

However, with respect to Plaintiffs' request for an order directing Defendant to pay contributions due and owing as a result of an audit, the District Court should deny Plaintiffs' request at this time. Instead, if more payments are due to Plaintiffs as a result of the audit, Plaintiffs should file a subsequent request with the exact amount.

Pursuant to Federal Rule of Civil Procedure 72, a party may serve and file objections to this Report and Recommendation within ten days of being served with a copy of said report.

IT IS SO RECOMMENDED

Dated: May 16, 2005                                    /s/ Maria-Elena James
                                                      MARIA-ELENA JAMES
                                                      United States Magistrate Judge